**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN W., individually and on behalf of N.W., a minor., | ) ) ) | |
| Plaintiff | ) ) | Case No. 1:24-cv-02168 |
| vs. | ) ) | Hon. Georgia N. Alexakis |
| HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIEL D of TEXAS, | ) ) ) ) | |
| Defendant. | ) ) | |

**BLUE CROSS AND BLUE SHIELD OF TEXAS'S COMBINED MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD AND OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Martin J. Bishop, 6269425
Rebecca R. Hanson, 6289672
Crowell & Moring LLP
300 N. LaSalle, 25th Floor
Chicago, Illinois 60654
Tel: 312.321.4200
Email: mbishop@crowell.com
Email: rhanson@crowell.com

*Attorneys for Defendant Health Care
Service Corporation d/b/a Blue Cross Blue
Shield of Texas*

Pursuant to Federal Rule of Civil Procedure 52, Defendant Health Care Service Corporation, a Mutual Legal Reserve Company, an unincorporated division of which is Blue Cross and Blue Shield of Texas ("BCBSTX"), respectfully moves this Court for judgment on Plaintiff Brian W.'s ("Plaintiff") claims under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Mental Health Parity and Addiction Equity Act ("Parity Act") as alleged in his Complaint ("Compl.") (ECF No. 1).

## I.  INTRODUCTION

Plaintiff seeks benefits under his health plan (the "Plan") for the inpatient care his son, N.W., received at Intermountain Children's Home ("ICH").  The Plan only covers certain inpatient facilities including hospitals, residential treatment centers ("RTC"s), and RTCs for Children and Adolescents ("RTCCAs"), all of which must provide 24-hour onsite nursing. ICH does not qualify as one of the enumerated facilities for two reasons: 1) it did not provide 24-hour onsite nursing, and 2) ICH was licensed by the State of Montana as a "Youth Care Facility – Therapeutic Group Home" and is, therefore, not a hospital, RTC, or RTCCA. Further, the Plan specifically excludes "[b]ehavioral health services provided at . . . group homes" from coverage, including group homes, like ICH, that provide counseling. In short, ICH was not a covered inpatient facility under the Plan and Plaintiff's claim for benefits fails as a matter of law.

Plaintiff's Parity Act claims fail independently. As a threshold matter, Plaintiff lacks standing to challenge the Plan's RTC and RTCCA definitions because ICH is a group home and thus even if every challenged RTC/RTCCA requirement were eliminated, ICH would not be covered. Plaintiff's unpled argument that the Plan's group home exclusion itself discriminates against mental health benefits misreads the Parity Act, which requires comparability — not identical treatment—between mental health and medical/surgical limitations. The exclusion

1

parallels the Plan's exclusion of supportive custodial care and the Plan's lack of coverage for analogous medical/surgical facilities, and courts applying these same Plan terms have dismissed analogous claims. For all of these reasons, and as demonstrated more fully below, this Court should enter judgment in favor of BCBSTX.

## II. RELEVANT BACKGROUND[1]

### A. The Plan Provides Coverage for Certain Enumerated Services and Facilities.

Plaintiff was a participant, and his son, N.W., was a beneficiary in the Plan. Compl. ¶ 3. N.W. received inpatient mental health care at ICH in Montana in 2022 and 2023. Compl. ¶ 4. The Plan covers services "specifically defined as Eligible Expenses in this Plan." PFF ¶ 2 (JX1 at 74). Thus, a service must be an Eligible Expense which includes "either, Inpatient Hospital Expenses, Medical-Surgical Expenses, Extended Care Expenses, or Special Provisions Expenses, or pharmacy expenses as described in this Benefit Booklet." Id. ¶ 3 (JX1 at 32, 80).

The Plan defines Inpatient Hospital Expense as care in a Hospital, or "in lieu of hospitalization," in a Psychiatric Day Treatment Facility ("PDTF"), a Crisis Stabilization Unit ("CSU"), an RTC, or a RTCCA. Id. at ¶ 4 (JX1 at 84). RTCs (including RTCCAs) must have 24-hour onsite nursing and do not include group homes or facilities providing "primarily a supportive environment . . . even if counseling is provided . . . ." Id. at ¶ 18 (JX1 at 79, 91). RTCCAs must be specifically licensed as an RTC and accredited by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") or the American Association of Psychiatric Services for Children ("AAPSC"). Id. ¶ 17 (JX1 at 91). The Plan excludes "[b]ehavioral health services provided at . . . group homes, except for Covered Services provided by appropriate Providers as described in this Benefit Booklet." Id. ¶ 20 (JX1 at 73).

---

[1] BCBSTX incorporates the facts in its Proposed Findings of Fact ("PFF") filed contemporaneously and includes this brief recitation for the Court's convenience.

"Medical-Surgical Expenses" are services "[f]urnished by or at the direction or prescription of a Physician, Behavioral Health Practitioner or Professional Other Provider" and "[n]ot included as an item of Inpatient Hospital Expense . . . in the Plan." *Id.* at ¶ 26 (JX1 at 74). The Plan defines a Skilled Nursing Facility ("SNF") as a facility primarily engaged in providing skilled nursing services, licensed under state law or Medicare/Medicaid eligible, and excludes services "primarily for personal comfort for convenience." *Id.* at ¶ 9 (JX1 at 14, 79-80).

**B.     BCBSTX Denied The Claims Because ICH Lacked 24-hour onsite nursing.**

ICH billed using a facility claim form with revenue code 1001, the universal billing code for Behavioral Health Accommodations for RTC treatment. *Id*. at ¶ 25 (JX1 at 2053 (ICH's claims billed on a UB-04 form for institutional billing), 4878-4893 (same), 7549-7571 (same)); *see also* Noridian     Medicare,     *Revenue     Codes*     (last     updated     Feb.     12,     2026), https://med.noridianmedicare.com/web/jea/topics/claim-submission/revenue-codes     (defining revenue          code          1001);          https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c25.pdf (UB-04 used for institutional billing).

ICH did not provide 24-hour onsite nursing (Compl. ¶ 26), and was not licensed as an RTC but rather as a Youth Care Facility — Therapeutic Group Home under Montana law (PFF ¶¶ 28, 23 (JX1 at 6018, 5985-5986), and was not accredited by JCAHO or AAPSC (*id.* ¶ 28 (JX1 at 6018)). BCBSTX evaluated ICH's claims under the Plan's RTC/RTCCA definition based on ICH's use of the RTC revenue code. BCBSTX denied coverage for N.W.'s treatment at ICH because ICH lacked 24-hour onsite nursing. *Id.* at ¶ 29 (JX1 at 3760-3770).

**C.     Procedural History.**

Plaintiff filed his Complaint on March 15, 2024. ECF 1. BCBSTX moved to dismiss and the Court denied the motion. ECF Nos. 9 and 18. At the pretrial conference in this case on April

3

22, 2026, the Court canceled the upcoming trial and ordered the parties to file Rule 52 motions that address Plaintiff's standing to bring his Parity Act claims. ECF 73 at 29-30.

## III. LEGAL STANDARD

Rule 52 permits a trial on the papers for the court to weigh the evidence, make conclusions, and resolve factual disputes. Fed. R. Civ. P. 52. Under *de novo* review, the court makes an independent decision about whether the plaintiff is entitled to plan benefits. *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). Plaintiff bears "the burden of proving entitlement to those benefits" by a preponderance of the evidence. *Jones v. Unum Life Ins. Co. of Am.*, No. 24 C 3911, 2026 WL 96985, at *2 (N.D. Ill. Jan. 13, 2026) (*citing Oye v. Hartford Life & Accident Ins. Co.*, 140 F.4th 833, 837 (7th Cir. 2025) (gaps in the record weigh against plaintiff).

## IV. ARGUMENT

Plaintiff's ERISA benefits claim fails because he cannot show by a preponderance of the evidence that N.W. received treatment at a covered facility. The Plan covers inpatient mental health treatment only at specific facility types, and ICH — a Youth Care Facility – Therapeutic Group Home — does not qualify. The Plan also expressly excludes group homes from coverage. Plaintiff's attempt to categorize ICH as a Medical-Surgical Expense fails because that category expressly excludes inpatient facility charges, such as the claims ICH submitted. This Court should enter judgment in favor of BCBSTX on Count I.

### A. ICH is a Group Home Which is Excluded From Coverage Under the Plan.

BCBSTX correctly denied coverage for ICH's claims because ICH does not qualify as an Eligible Expense under the Plan. *Jones*, 2026 WL 96985, at *2. ERISA only protects "contractually defined benefits." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003) (citation omitted). Here, ICH indisputably billed its services using the revenue code for RTCs. PFF at ¶ 25

(JX1 at 2053 (claim form), 4878-4893 (same), 7549-7571 (same)). BCBSTX denied coverage for ICH's services because ICH did not qualify as an RTC, because it did not provide 24-hour onsite nursing, as the Plan requires. *Id.* at ¶ 29 (JX1 at 3760-3770).

ICH did not qualify under the Plan as an RTC not only because it did not provide 24-hour onsite nursing, but also because it was licensed as a group home and the Plan's RTC definition plainly states that RTCs do not include group homes. *Id.* at ¶¶ 18, 20 (JX1 at 73, 91). The Plan only covers items and services "specifically defined as Eligible Expenses in this Plan," *Id.* at ¶ 2 (JX1 at 74) and, because the Plan expressly states that group homes do not qualify as RTCs and otherwise expressly excludes group homes even if they provide counseling, Plaintiff cannot recover benefits for ICH's facility charges. *Black & Decker*, 538 U.S. at 830.

Plaintiff makes several unavailing arguments to try to save his claim. Plaintiff contends, for example, that Montana defines "Therapeutic Group Homes" in a manner that transforms ICH into something other than a group home, despite "group home" being in the title of ICH's license. ECF 75 at 7-8. Plaintiff asserts that only a "Youth Group Home" (what Plaintiff calls a "regular youth group home" in his brief) would be considered a "group home" under the Plan, and that a "Therapeutic Group Home" is sufficiently different to escape the Plan's group home exclusion because "regular youth group homes" provide "substitute care," but "Therapeutic Group Homes" provide "primarily clinical services." *Id.* at 7.

This misreads both Montana's licensing framework and the Plan's terms. Under Montana law, *both* "regular youth group homes" *and* "Therapeutic Group Homes" are defined as a "licensed facility in which *substitute care* is provided to youth." Mont. Admin R. 37.97.102(28) (emphasis supplied). Montana defines "substitute care" as "full-time care of youth in a residential setting for the purpose of providing food, shelter, security and safety, guidance, direction, and, if necessary,

5

treatment to youth who are removed from or who are without the care and supervision of their parents or guardian." *Id.* at 37.97.102 (21). "Substitute care" is the overarching characteristic Montana law applies to *both* facility types, despite Plaintiff's claim to the contrary.

Nonetheless, Plaintiff emphasizes Montana's definition of "Therapeutic Group Home" as "a treatment facility providing therapeutic services" to argue it is distinct from a substitute care setting. ECF 75 at 5, 7, citing Mont. Admin. R. 37.97.102(22). But this argument proves too much. The Plan's group home exclusion expressly contemplates that excluded facilities may provide counseling and excludes them anyway. PFF ¶ 18 (JX1 at 91) (exclusion applies "even if counseling is provided"). The question is not whether ICH provides clinical services, but whether its primary function is to provide a supportive environment — and Montana law answers that question directly by categorizing Therapeutic Group Homes as "substitute care." Mont. Admin. R. 37.97.102(21).

Montana's confirmation that "Therapeutic Group Homes" provide "substitute care" maps onto the Plan's exclusionary language. The statutory definition lists food, shelter, security, safety, guidance, and direction as primary functions, with treatment appearing last and conditional: "if necessary." Mont. Admin. R. 37.97.102(21). This mirrors the Plan's exclusion of facilities "providing primarily a supportive environment and addressing long-term social needs, even if counseling is provided." PFF ¶ 18 (JX1 at 91). *See James D. v. Health Care Serv. Corp.*, 1:25-CV-03681, 2026 WL 891868, at *2 (N.D. Ill. Mar. 31, 2026) (noting it "defies reason" to suggest that a program with plan's exclusion in title would escape the exclusion). The distinction between a "Youth Group Home" and a "Therapeutic Group Home" is one of degree within a "substitute care" model — not a difference in classification. Both are expressly excluded under the Plan.

Plaintiff also emphasizes that ICH maintained thousands of pages of records as purported evidence that ICH provided something other than group home services, but those records do not

alter the conclusion that ICH is not covered under the Plan. Plaintiff tellingly cites only thirteen of those thousands of pages as evidence of therapeutic over supportive care. ECF 76 at ¶ 22 (Plaintiff's Proposed Fact No. 22). Review of those thirteen pages undercuts Plaintiff's position. *See, e.g., id.* at Plaintiff's Proposed Fact No. 22 (JX1 at 1771, ███████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████ JX1 at 4112-13 ████████████████████ ████████████████████████████████████████████████ ██████████████ JX1 4107-08 ██████████████████ ████████████████████████████████████████████████ and JX1 at 33845-46, 3921-22, 3991-92 ██████████████ █████████████████████████████████

In addition, the thousands of pages of ICH records reveal that over the 365 days, N.W. ████████████████████████████████████████████████ ████████ PFF ¶ 36 (JX1 at 2942-2943, 3164-3165, 3145-3146, 2688-2689, 2580-2581, 6286-6287, 6233-6234, 6147-6148, 2463-2464, 5939-5940, 5817-5818, 5367-5368, 5354-5355, 5654-5655, 5604-5605, 5213-5214, 5147-5148, 5073-5074, 4931-4932, 4581-4582, 4762-4763, 4701-4702, 4472-4473, 4394-4395, 4270-4271, 4134-4135, and 4112-4113). Further, analysis of ICH's ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ Thus, Plaintiff has failed to meet his burden to demonstrate by a preponderance of the evidence that ICH was not a primarily supportive

7

environment. Rather than marshaling evidence sufficient to establish that his claims are more likely true than not, Plaintiff offers only a threadbare record that leaves the scales in Defendant's favor.

Plaintiff's reliance on *Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 825-26 (N.D. Ill. 2019), does not rescue his claim. *Alice F.* applied ordinary contract-interpretation principles to analyze substantially similar Plan terms and characterize excluded facilities as those providing primarily a supportive environment; it did not hold that any facility providing some clinical services escapes the exclusion. 367 F. Supp. 3d at 828-29. The Plan's text forecloses that reading: the exclusion applies "even if counseling is provided." PFF ¶ 16 (JX1 at 91); *id.* at ¶ 18 (JX1 at 91). Plaintiff's reading would improperly write that phrase out of the Plan. *See Schultz v. Aviall, Inc.*, 670 F.3d 834, 838 (7th Cir. 2012). Moreover, courts applying these exact plan terms have cited *Alice F.* as support for denying coverage. *See O.F. v. Health Care Serv. Corp.*, No. 1:25-CV-00127, 2026 WL 885184, at *6 (N.D. Ill. Mar. 31, 2026); *James D.*, 2026 WL 891868, *5.

In short, the Plan contemplates that some group homes will provide clinical support and excludes them anyway. ICH is a group home and Plaintiff's claim for benefits fails.

**B.     ICH Does Not Qualify as an Eligible Expense Under the Plan.**

Even apart from the group home exclusion, ICH does not qualify as a covered facility because it does not fit any Eligible Expense category under the Plan. The Plan provides that benefits are not available for "[a]ny services or supplies not specifically defined as Eligible Expenses in this Plan" and, thus, ICH must fall into an Eligible Expense to be covered. PFF ¶ 2 (JX1 at 74). Plaintiff concedes that ICH does not fall under Extended Care, Special Provisions, or Pharmacy Expenses. *See generally*, ECF 75. ICH does not qualify as an Inpatient Hospital Expense or a Medical-Surgical Expense, as demonstrated below.

8

ICH is a facility that billed for N.W.'s stay using revenue code 1001 for Behavioral Health Accommodations for Residential Treatment — necessarily an inpatient service. *See supra at* II.B. The Plan covers inpatient mental health facility charges at a Hospital and, "in lieu of hospitalization," at a PDTF, a CSU, an RTC, or an RTCCA. PFF ¶ 4 (JX1 at 7, 84). These are the only facilities that can bill for inpatient mental health care. *Id*. at ¶ 2 (JX1 at 74) (excluding services "not specifically defined as Eligible Expenses")).

Plaintiff does not argue that ICH is a Hospital, PDTF, or CSU. *See generally*, ECF 75. ICH is also not an RTC because it did not provide 24-hour onsite nursing and the definition of RTC expressly excludes group homes. PFF ¶ 18 (JX1 at 91). ICH is also not an RTCCA because it was not licensed as an RTC or accredited by JCAHO or AAPSC. Thus, ICH's facility charges do not qualify as an Inpatient Hospital Expense.

Plaintiff's argument that ICH qualified as a "Medical-Surgical Expense" fails for three reasons. First, the Medical-Surgical Expense definition expressly excludes services "[n]ot included as an item of Inpatient Hospital Expense or Extended Care Expense in the Plan." PFF ¶ 5 (JX1 at 86). ICH billed every claim as an inpatient facility providing room accommodation charges — charges that fall under Inpatient Hospital Expenses, not Medical-Surgical Expenses. *Id.* ¶ 26 (JX1 at 84) (noting that Inpatient Hospital Expenses include room accommodation charges).

Second, and relatedly, ICH's facility-level charges do not fit the Medical-Surgical Expense framework, which covers professional service charges by individual Physicians, Behavioral Health Practitioners, or Professional Other Providers— not room and board charges billed by a facility. *Id.* at ¶ 5 (JX1 at 86) (specifically excluding "item of Inpatient Hospital Expense"). No individual, non-inpatient facility provider submitted a claim.[2] *See generally*, PFF ¶¶ 25-27.

---

[2] The Court at the pleading stage drew an inference in Plaintiff's favor that Professional Other Providers such as Licensed Clinical Social Workers "might provide treatment for mental and behavioral health issues

Third, the group home exclusion bars coverage regardless of which Eligible Expense category is invoked. The Plan excludes "[b]ehavioral health services provided at … group homes" categorically — not merely under the Inpatient Hospital Expense category. *Id*. ¶ 20 (JX1 at 73). ICH is a group home, and the exclusion applies whether Plaintiff characterizes the claim as an Inpatient Hospital Expense or a Medical-Surgical Expense.

### C.     Plaintiff's Other Arguments Do Not Save His Claim for Benefits.

Plaintiff makes three other misguided arguments that do not save his claim. First, Plaintiff argues that ICH escapes the group home exclusion because the exclusion contains a "carve-out" for "Covered Services provided by appropriate Providers," and that ICH was an "appropriate Provider" because it was licensed to provide inpatient Mental Health Care. ECF 75 at 6. But this argument would swallow the group home exclusion entirely.

The term "Covered Services" limits the carve-out to services otherwise covered under the Plan. PFF ¶ 20 (JX1 at 73). If a service is barred by the group home exclusion, it is not a "Covered Service," and the exception cannot bootstrap coverage for the very facility charges the exclusion bars. The carve-out preserves coverage for discrete professional services — such as a visit by a licensed clinical social worker who bills separately on a CMS-1500 form — that independently qualify as Eligible Expenses. It does not convert a group home's institutional facility charges into Eligible Expenses. And ICH cannot be an "appropriate Provider" under the exception because

---

like N.W.'s" and thus that some of N.W.'s treatment might qualify as a Medical-Surgical Expense. ECF 18 at 6. The full administrative record now forecloses that inference: Plaintiffs only seek coverage for ICH's charges and do not seek coverage for professional claims for N.W.'s treatment at ICH. PFF ¶¶ 24-27. All claims at issue were submitted solely by ICH as an institution *Id.* at ¶ 24 (JX1 at 2053, 4878-4893, 7549-7571). Without such practitioner claims, Plaintiff cannot recover for those individual services, and it is too late for Plaintiff to submit such claims. *See id.* ¶ 3 (JX1 at 35) (noting that claims must be submitted within 12 months of the date of service)); *see Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 576 (7th Cir. 1998) (a plan member must apply for the benefits to which he claims entitlement in order to bring a claim).

group homes are what the exclusion excludes. Reading the exception to cover group homes would render the exclusion a forbidden nullity. *Schultz*, 670 F.3d at 838.

Next, Plaintiff claims the phrase "licensed facility" in the Plan's Mental Health Care definition – which actually says "other licensed facility" – means that because ICH is licensed, its services are covered. ECF 75 at 3-4; PFF ¶ 12. The Court found at the pleading stage that the Plan did not "actually say" that "other licensed facilities" must fall in an Eligible Expense category. ECF 18 at 7 n.2. On the full record, the Plan's text and structure compel exactly that conclusion.

The "other licensed facility" language appears within the Plan's *definition* of "Mental Health Care" — a provision describing what services and settings constitute Mental Health Care. That definition does not describe what is covered – coverage is separately and expressly governed by Exclusion 46 in the Plan, which excludes "any services or supplies not specifically defined as Eligible Expenses in this Plan." PFF ¶ 2 (JX1 at 74). A service may qualify as Mental Health Care within the definitional provision and still not be a covered Eligible Expense if it does not independently satisfy one of the Plan's enumerated Eligible Expense categories. The "other licensed facility" phrase describes where a Mental Health Care service may be rendered — it is not itself a grant of coverage. *Inpatient* Mental Health Care must fall under the Inpatient Hospital Expense definition to be covered under the Plan. *See supra* at II.A-B.

Plaintiff's contrary reading is impermissible. The Plan's RTCCA definition imposes exacting requirements — 24-hour onsite nursing, 24-hour medical availability, RTC licensure, and JCAHO or AAPSC accreditation. If any licensed facility providing Mental Health Care generated equivalent inpatient coverage, those requirements would be superfluous. *Schultz*, 670 F.3d at 838. So too would the Plan's enumeration of recognized inpatient facility types, the group home

11

exclusion, and the general bar on services not specifically defined as Eligible Expenses — a result settled contract-interpretation principles forbid. *Id*.

The harmonizing construction is straightforward: "other licensed facility" contemplates that a Physician or Professional Other Provider — all individuals, not facilities — may render a covered service in a variety of licensed settings, without transforming the facility itself into a covered inpatient provider. This reading gives effect to every Plan provision: the Eligible Expense categories remain the coverage gatekeepers, the group home exclusion remains intact, and the RTCCA definition retains its purpose. In short, even if discrete professional services at ICH might independently be covered, the room and board charges at issue are not. *See Andrew P. v. Blue Cross of California*, No. 5:25-cv-02158, 2025 WL 3637030, at *2 (N.D. Cal. Dec. 15, 2025) (dismissing room-and-board claim where provider was not an enumerated inpatient facility, even though plan did not limit all mental health coverage to those facility types).

Plaintiff's final argument contends that unlike the Substance Use Disorder ("SUD") inpatient benefit — which states that treatment "must be provided in a Chemical Dependency (SUD) Treatment Center, [RTC] or Hospital" — the Mental Health Care inpatient benefit contains no "must be provided in" language, indicating no facility-type restriction. ECF 75 at 4. The Mental Health Care provision for inpatient care uses a different but functionally equivalent mechanism: it identifies the facility types at which inpatient care generates Inpatient Hospital Expense benefits. If the drafters intended coverage at *any* licensed facility, they had every reason to say so — particularly after drafting a specific facility-type restriction for SUD in the same section. The Plan's detailed enumeration of recognized facility types, each with precise definitions, and the exclusion of unlisted services demonstrate that the enumeration is exhaustive. *See* PFF at ¶ 13 (JX1 at 74, 79, 90–91). In short, there is no path to coverage for ICH as an inpatient facility.

**V.      Plaintiff's Parity Claims Fail Either for Lack of Standing Or On the Merits.**

Plaintiff lacks standing to bring his Parity Act claims related to the Plan's RTC and RTCCA definitions. Article III standing requires (1) a concrete injury-in-fact; (2) a causal connection between the injury and the challenged conduct; and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff alleges that BCBSTX violated the Parity Act through unequal treatment of mental health versus medical/surgical benefits with respect to the Plan's licensure, accreditation, and 24-hour onsite nursing requirements, Plaintiff still could not recover because ICH would remain excluded. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). Plaintiff fails to address the merits of these arguments and thus waives them. *SBC Tower Holdings, LLC v. Lariba Grp., LLC*, No. 22 CV 3219, 2025 WL 2696440, at *7-8 (N.D. Ill. Sep. 22, 2025) (J. Alexakis).

Plaintiff also asserts an unpled[3] Parity Act claim — that the group home exclusion applies only to "[b]ehavioral health services" and not to medical/surgical services. ECF 75 at 12. The Parity Act is not a benefit mandate; it requires that treatment limitations on mental health benefits be "comparable to, and are applied no more stringently than" those applied to medical/surgical benefits. 29 C.F.R. § 2590.712(c)(4)(i); *see also id*. § 2590.712(c)(2)(i)-(ii). This test requires comparability, not equality. *James C. v. Anthem Blue Cross and Blue Shield*, No. 2:19-cv-38, 2021 WL 2532905, at *20 (D. Utah Jun. 21, 2021).

The Plan provides inpatient benefits for SNFs (medical/surgical) and RTCs/RTCCAs (mental health), satisfying the Parity Act's classification requirement. 78 Fed. Reg. 68240, 68247. The group home exclusion does not limit RTC coverage because RTCs and group homes are

---

[3] Because Plaintiff's theory is unpled, BCBSTX had no opportunity to develop any expert evidence on this issue and relies solely on the Plan's terms, as a result. *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 (7th Cir. 2002) (parties cannot recover on unplead theories).

distinct facility types.[4] *See Alice F.*, 367 F. Supp. 3d at 825-26; *A.G. v. Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 839-42 (S.D. Ohio 2019). Thus, group homes need not be covered under the Plan to satisfy Parity. Even if the exclusion were relevant, it complies with the Parity Act's comparability test: the Plan excludes group homes because they "provide primarily a supportive environment and address long-term social needs," PFF at ¶ 16 (JX1 at 91), which is comparable to the Plan's exclusion of custodial care — care "primarily for personal comfort for convenience" — from SNF benefits, JX1 at 79. *See James D.*, 2026 WL 891868, at *5; *O.F.*, 2026 WL 885184, at *6.

The exclusion also complies with the Parity Act beyond the SNF analogy. The carve-out preserves coverage for *professional services* at group homes, and thus the exclusion is confined to inpatient benefits like room and board — placing group homes on equal footing with analogous medical/surgical facilities, such as assisted living facilities[5] and specialty camps, which the Plan also excludes. *See Peter M. v. Aetna Health & Life Ins. Co.*, 554 F. Supp. 3d 1216, 1227-28 (D. Utah 2021); *Andrew P.*, 2025 WL 3637030, at *3. That the group home exclusion is express while

---

[4] Notably, Plaintiff has failed to identify any comparator service on the medical/surgical side to group homes on the mental health side. This is fatal to Plaintiff's claim as the Parity Act is at heart a comparison between analogous benefits in the same benefits classification. 29 U.S.C. § 1185a(a)(3)(A)(ii).

[5] Plaintiff may argue that the Plan's coverage of treatment in rehabilitation/assisted living facilities for acquired brain injury ("ABI") on the medical/surgical side, but not of a supportive residential setting for behavioral health conditions, creates a parity disparity. This argument fails for several reasons. First, the ABI benefit is not a voluntary plan design choice — it is mandated by Texas Insurance Code Article 21.53Q and implemented through Texas Department of Insurance ("TDI") Subchapter W, 28 Tex. Admin. Code §§ 21.3101–21.3105. The Parity Act is directed at a plan's own design decisions, not state-mandated benefits. 29 C.F.R. § 2590.712(c)(4)(i); 78 Fed. Reg. 68,240 (Nov. 13, 2013). Second, the ABI benefit is a diagnosis-specific carve-out, not broad medical/surgical coverage, and therefore does not establish a plan-wide benefit against which mental health coverage must be measured. Even if it did, the Plan would not cover it as an Inpatient Hospital Expense for room and board because rehabilitation/assisted living facilities are not listed as facilities falling within that category. *See supra* at section II.A; *see also* JX1 at 63 (noting that "treatment" in a facility is covered, but not the "facility" itself). Third, *TDI has expressly confirmed the ABI benefit includes mental health treatment.* https://www.tdi.texas.gov/rules/2002/brain2.html (last accessed June 18, 2026) (noting that the benefit includes treatment of mental health conditions that are caused by the ABI). A member with ABI thus has equal access to treatment for mental health and medical/surgical conditions alike. In short, there is no Parity Act issue with respect to the Plan's ABI coverage.

14

the exclusion of analogous medical/surgical facilities is implicit is immaterial; express and implied exclusions carry equal force. *See Bushman v. State Mutual Life Assur. Co. of America*, 915 F. Supp. 945, 952 (N.D. Ill. 1996); *cf. C.B. v. BlueCross BlueShield of Ill.*, No. 23-cv-01206, 2025 WL 524153, at *3 (N.D. Ill. Feb. 18, 2025), appeal filed, No. 25-1323 (7th Cir. Feb. 27, 2025).

The decisions Plaintiff relies on are inapposite because they involve exclusions that restricted RTC coverage, applied only to mental health treatment, or encompassed medically necessary treatments at the excluded program. *See C.M. v. Health Care Service Corp.*, No. 24-cv-02122, 2025 WL 933847, at *4 (N.D. Ill. Mar. 27, 2025). The Plan operates differently. The group home exclusion is a facility-type exclusion that defines what is not a covered inpatient facility — it does not limit or condition RTC coverage. RTCs and group homes are distinct facility types, and ICH — whose Montana licensing designation mirrors the Plan's own exclusionary language — was never within the Plan's RTC framework. The Parity Act is not violated by a plan's exclusion of a facility category it has never covered, where an analogous exclusion applies comparably on the medical/surgical side.[6] *James D.*, 2026 WL 891868, at *5; *O.F.*, 2026 WL 885184, at *6.

Courts recognizing these features consistently dismiss Parity Act claims. *See James D.*, 2026 WL 891868, at *5; *A.G.*, 363 F. Supp. 3d at 839-42; *Alice F.*, 367 F. Supp. 3d at 828-29; *Andrew P.*, 2025 WL 3636030, at *3; *Peter M.*, 554 F. Supp. 3d at 1227-28. The Court should follow these authorities and enter judgment in BCBSTX's favor.

## VI. CONCLUSION

For the foregoing reasons, the Court should enter judgment in BCBSTX's favor.

---

[6] Neither the court in *C.M.*, nor in *Curtis C. v. Health Care Serv. Corp.*, No. 25 C 884, 2025 LX 586139 (N.D. Ill. Dec. 18, 2025) analyzed plan terms like the carve-out language at issue here, which preserves coverage for professional services (*e.g.*, licensed clinical social workers billing individually for Mental Health Care services). This carve-out fundamentally narrows what the exclusion does: it reaches only inpatient facility charges, not all behavioral health services at group homes. What remains is directly analogous to the Plan's exclusion of custodial-care charges from SNF benefits on the medical/surgical side.

Dated: June 22, 2026

Respectfully submitted,

By: */s/ Rebecca R. Hanson*

Martin J. Bishop, 6269425
Rebecca R. Hanson, 6289672
Crowell & Moring LLP
300 N. LaSalle Drive, 25th Floor
Chicago, Illinois 60611
Email: mbishop@crowell.com
Email: rhanson@crowell.com

*Counsel for Blue Cross and Blue Shield of Texas*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2026, a true and correct copy of the foregoing

was served on Plaintiff's counsel of record through ECF in accordance with the Federal Rules of

Civil Procedure, including:

Brian S. King
BRIAN S. KING, P.C.
420 East South Temple, Suite 420
Salt Lake City, UT 84111
brian@briansking.com

*Attorney for Plaintiff*

/s/ Rebecca R. Hanson
Rebecca Hanson

17